964 P.2d 675

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James J. JOHNSON, Defendant–Appellant.**

**No. 24332.**

Court of Appeals of Idaho.

Sept. 24, 1998.

Joseph J. Allegria, II, Boise, for Defendant-Appellant.

Hon. Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for Plaintiff-Respondent. Kimberly A. Coster argued.

PERRY, Judge.

James J. Johnson appeals from the district court's memorandum decision affirming the

magistrate's order requiring Johnson to undergo testing for HIV antibodies or antigens and hepatitis B virus, pursuant to I.C. § 39–604(4). Johnson contends that there was insufficient evidence to support the magistrate's finding that the crime charged was one where body fluid would likely be transmitted. We reverse the order requiring Johnson to undergo testing.

## I.

### FACTS AND PROCEDURE

Johnson bit a police officer on the leg. The officer was wearing duty pants with long johns underneath. Johnson was charged with battery on a police officer, I.C. §§ 18–904, –915, and pledguilty.

The state requested that the magistrate order Johnson to be tested for the presence of HIV and for hepatitis B, pursuant to I.C. § 39–604(4). A hearing was held and two witnesses testified, Deputy Trauvel, the officer who was bit, and Pam Marcum, who is a forensic scientist with the Department of Law Enforcement. The magistrate found that body fluids had likely been transmitted and ordered that Johnson be tested at his own expense. The testing was stayed, however, pending appeal.

Johnson appealed, and the district court affirmed. Johnson further appealed to this Court, and we, in an unpublished opinion, remanded the case for a determination whether the district court had jurisdiction to hear the initial appeal. *State v. Johnson,* Docket No. 24332 (Ct.App. Feb. 24, 1997). The district court, on remand, determined that it had jurisdiction to hear the appeal and reinstated its original decision, affirming the magistrate's order requiring Johnson to submit to testing. Johnson has again appealed.

## II.

### DISCUSSION

#### A. Arguments

Johnson asserts that Marcum's testimony was insufficient to establish that it was likely body fluids were transmitted when Johnson bit Deputy Trauvel's leg. Johnson argues that Marcum testified at times that it was likely fluids were transmitted, but then retreated from that position. Johnson contends that Marcum only affirmatively opined that it was *possible* fluid was transmitted, but never unequivocally stated that it was *likely* fluid was transferred.

The state contends that "[a]s a matter of common sense and everyday experience, the inescapable inference is that at least some saliva was likely transmitted." The state claims that expert witness testimony was not necessary. However, the state maintains, even if expert testimony was necessary, the testimony in this case was sufficient to uphold the magistrate's findings.

#### B. Standard of Review

■ This is a sufficiency of the evidence case and our appellate review is limited in scope. Findings of fact supported by substantial and competent evidence will not be set aside on appeal. *Kootenai Elec. Co-op. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995). The magistrate's factual findings will be liberally construed in favor of the judgment, and will not be set aside unless clearly erroneous. *Id.,* 127 Idaho at 435, 901 P.2d at 1336. For evidence to be substantial, it must be of sufficient quality that reasonable minds could reach the same conclusion. *Bott v. Idaho State Bldg. Auth.,* 128 Idaho 580, 586, 917 P.2d 737, 743 (1996).

#### C. Authority

■ Idaho Code Section 39–604(4) reads:

All persons who are charged with any crime in which body fluid as defined in this chapter has *likely* been transmitted to another shall be tested for the presence of HIV antibodies or antigens and for hepatitis B virus.

(Emphasis added). We construe a statute by giving effect to the legislative intent, which, if possible, is determined by the plain language of a statute. *State v. Nunes,* 131 Idaho 408, 409, 958 P.2d 34, 35 (Ct.App.1998).

## D. Analysis

### 1. Common knowledge

■ The state's first contention, that it is common knowledge this particular bite would transmit body fluids, is not persuasive. The state called an expert witness, who at times testified that she was not qualified to give an opinion on the matter, stating that the questions were beyond her expertise. Moreover, in this case, the bite was made over duty pants and long johns. Although the skin was broken, there was no testimony that the pants or the long johns were torn, and no tear in the pants appears in the pictures entered as exhibits. We disagree with the state's position that it is apparent to the average person that body fluids likely would have passed through the clothing. Thus, we must decide whether the expert's testimony provided sufficient evidence that it was likely that body fluids were transmitted when Johnson bit the officer's leg.

### 2. Sufficiency of expert testimony

Marcum stated several times during her testimony that it was possible that body fluids were transmitted when Johnson bit Deputy Trauvel's leg. However, Marcum always wavered and refused, ultimately, to affirmatively assert that it was more likely than not that body fluid was transferred. When initially asked if it was likely that the bite transmitted body fluids, the following colloquy took place:

[Marcum]: Your Honor, I can't answer that yes or no. Could I elaborate?

[Court]: Yes.

[Marcum]: Okay. Likely, I guess I'd have to have a definition. It's possible. Likely gives more of a preponderance that it was for sure. It's theoretically possible that body fluids were transferred. And there would be a risk of picking up Hepatitis B or AIDS from a physical trauma like this. But, likely—I guess you're getting into percentages there. And I don't testify to percentages. I would like to prefer to say there is a small risk. It's theoretically possible that infectious agents could have been transferred.

Marcum went on to testify several times that it was likely the body fluids could be transmitted by a bite of this nature. However, when defense counsel and the magistrate questioned Marcum, trying to pin down exactly what she intended to say, she responded:

That's right [I can't quantify whether or not body fluid was transmitted]. I don't know anything in the literature that—where they've done studies on whether—the likelihood of it happening. There have been pin pricks where there's been a transfer and infections caused. We're getting beyond my area of expertise here, also. So I'm getting a little uncomfortable on talking about the likelihood of it happening. I know, from my reading and talk to doc—talking to Dr. Jessy Greenblat about this. But I don't know the percentages that you're trying to get from me. I don't know if anybody knows those.

Marcum also expressed that she was unsure whether the bite would likely transmit body fluid.

[Prosecutor]: [H]e's tried to couch in terms of being likely, meaning 51 percent or more is more likely than less likely. And the question, I think, he has for you is: Under that definition of "likely", at 51 percent meaning likely; is it likely that a bite that breaks the skin would pass a body fluid?

[Marcum]: I don't know. And I don't know anybody who knows the answer to that. I don't know.

Later, Marcum admitted that she was not a physician and then said "I would like to get Dr. Greenblat in here to testify as the medical person. I don't know if he would give percentages either. I don't know if anybody knows that definition." As we noted earlier, no other expert witnesses testified.

After reviewing all of the evidence presented, and viewing it in the light most favorable to the prosecution, we conclude that the evidence does not establish that it was likely that body fluids were transmitted by the bite under the facts of this case. The definition of likely requires that the event "make something probable and [have a] better chance of existing or occurring than not." BLACK'S LAW DICTIONARY 925 (6th ed.1990). Al-

though Marcum testified at times that it was likely, she failed to support those statements with meaningful reasoning or analysis. In fact, she said on different occasions that she was unqualified to respond and that nobody would know the answer. Marcum finally testified that it was likely that body fluid could be transferred, but "[n]ot more likely."

Under *Kootenai Elec. Co-op.*, findings should be upheld if they are supported by substantial and competent evidence. 127 Idaho at 435, 901 P.2d at 1336. However, upon review, we hold that the evidence presented by Marcum is not substantial or competent. As noted, Marcum refused to stand by her initial statements that the bite was likely to transmit body fluids. Thus, the evidence is deficient; she never declared, without qualification, that the bite, under the facts as presented in this case, was likely to transmit bodily fluid. Therefore, the evidence presented was insufficient to uphold the magistrate's finding, and the order requiring Johnson to undergo testing is hereby reversed.

LANSING, C.J., concurs.

SCHWARTZMAN, Judge, specially concurring.

I concur in the opinion and reasons stated therein. I write only to note that this whole brouhaha could have been neatly avoided had the trial judge just made the HIV testing a "condition of probation" after Johnson pled guilty and was placed onto probation. Idaho Code § 39–604(4) speaks to persons "charged" with any crime in which body fluid has "likely" been transmitted; it does not address the situation where a person has been "convicted." Thus, it would have been well within the trial court's discretion to impose the giving of an HIV test, under the facts enumerated herein, as a condition of Johnson's probation.