992 P.2d 769

STATE of Idaho, Plaintiff–Respondent,

v.

Tod M. REVENAUGH, Defendant–
Appellant.

No. 24350.

Supreme Court of Idaho,
Boise, September 1999 Term.

Dec. 9, 1999.

Rehearing Denied Feb. 3, 2000.

Frederick G. Loats, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Karen A. Hudelson, Deputy Attorney General, argued.

TROUT, Chief Justice.

Tod M. Revenaugh appeals from the district judge's denial of his motion to suppress evidence. Revenaugh argues that because the warrant authorizing the search of his residence was based in part on information obtained from at least one, and possibly two illegal searches, the warrant is invalid and all evidence seized pursuant to that warrant should have been suppressed. Because we believe that the motion was properly denied, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On May 5, 1997, Deputy Stewart Miller of the Kootenai County Sheriff's office was dispatched to a business on a malicious injury to property call. The owner of the property showed Deputy Miller four holes which appeared to be caused by bullets. By inserting an ink pen into the holes, Deputy Miller determined that the trajectory of the bullet holes pointed toward a residence approximately fifty to sixty yards away. Deputy Miller then walked toward the residence to determine whether the occupants had any information concerning the bullet holes.

Deputy Miller proceeded to walk up the normal walkway to the residence. When he reached a point approximately six to eight feet from the open front door, he observed three individuals, one of whom was later identified as the occupant of the residence, Tod Revenaugh, engaged in some activity around two large black plastic garbage bags, and one small clear baggie. At the same time, Deputy Miller observed one of the men holding a green stalk and apparently trimming leaves from that stalk. Additionally, Deputy Miller smelled the strong odor of marijuana.

At that time, Deputy Miller yelled "stop" and then heard someone from the house yell "cop" as the door was slammed shut. Deputy Miller then pushed the door open and ordered everyone out of the house. Two of the individuals immediately exited the house. Revenaugh did not emerge right away, but was eventually persuaded to exit by the other two individuals.

Deputy Miller then read Revenaugh his *Miranda* warnings and Revenaugh informed him that he was the renter of the house. Deputy Miller asked for permission to search the residence and Revenaugh denied that request. At that point, Deputy Miller summoned other officers for assistance. After those officers arrived, Deputy Miller and other officers entered the residence in order to make sure there was no one else in the house. During that time, Deputy Miller observed marijuana and paraphernalia on a counter in the residence. After discovering a closed door which felt very warm and hearing noises from inside the room which sounded like a house fan, the officers exited the house and decided to wait for a K–9 unit. After the arrival of the K–9 unit, the officers

again entered the house and entered the closed room. During this search, Deputy Miller observed several hundred growing marijuana plants and paraphernalia. Following this search, Deputy Miller applied for and received a search warrant. Pursuant to the search warrant, 465 marijuana plants and related paraphernalia were seized. Based on this evidence, Revenaugh was arrested and charged with trafficking in marijuana.

On May 20, 1997, a preliminary hearing was held at which the magistrate judge determined there was probable cause and bound Revenaugh over for trial. Prior to trial, Revenaugh's counsel filed a motion to suppress all evidence taken from Revenaugh's residence on the grounds that the warrant authorizing the seizure was based on illegally obtained evidence. After briefing and a hearing, the trial judge made oral findings of fact and held that (1) that the first warrantless search was justified as a protective sweep, (2) that the second search conducted with the K–9 unit was unconstitutional,[1] and (3) that the warrant would have been issued even without the information obtained from the second, illegal, search. The district court therefore denied Revenaugh's motion to suppress. Thereafter, Revenaugh entered into a written Rule 11 conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. The court entered judgment, imposing a unified six-year sentence with five years fixed. This appeal then followed.

## II.

## STANDARD OF REVIEW

█ When reviewing a trial court's ruling on a defendant's motion to suppress, we defer to the trial court's factual findings unless they are clearly erroneous. *State v. Medley*, 127 Idaho 182, 185, 898 P.2d 1093 (1995).

However, in light of the trial court's factual findings, we exercise free review over whether the constitutional requirements have been met. *See id.*

## III.

## DISCUSSION

### A. Deputy Miller's Initial Warrantless Entry into Revenaugh's Residence Falls Within the Protective Sweep Exception to the Warrant Requirement.

█ It is a fundamental principle of Fourth Amendment law[2] that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980); *see also Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 742 (1984); *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). Consequently, such searches are unconstitutional unless a "specifically enumerated exception to this rule applies." *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986). In 1990, the United States Supreme Court defined one such exception, upholding a protective sweep of a residence after the suspect had been arrested. *See Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286 (1990). In *Buie*, the Court announced the rule that following the in-home arrest of a suspect, the police could conduct a protective sweep of the premises provided that they had a reasonable, articulable suspicion "that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

*Buie* involved a protective sweep after an in-home arrest. In contrast, in this case, Revenaugh was detained, rather than arrest-

---

1. The State has not appealed the district court's decision that the second search was unconstitutional. Consequently, we decline to address the constitutionality of that search. Rather, for the purposes of this appeal, we assume that the search was in fact unconstitutional.

2. On appeal, Revenaugh also stated the issue as whether the search violated the Idaho Constitution. However, Revenaugh has made no argu-

ment, either below or on appeal, as to why the Idaho Constitution should be interpreted to provide greater protection than the 4th Amendment under the facts of this case. Therefore, Revenaugh's state constitutional claim will not be considered. *See State v. Ross*, 129 Idaho 380, 381, 924 P.2d 1224, 1225 (1996); *State v. Wheaton*, 121 Idaho 404, 407, 825 P.2d 501, 504 (1992).

ed at the time the warrantless entry occurred. Furthermore, the detention occurred immediately outside of Revenaugh's residence rather than inside, as was the case in *Buie.* Therefore, in deciding whether Deputy Miller's warrantless entry in Revenaugh's residence was justified as a protective sweep, we must first determine whether the protective sweep exception to the warrant requirement applies where the suspect is only detained and not formally placed under arrest at the time the protective sweep is conducted. Additionally, we must determine if the protective sweep exception applies when the suspect is detained outside of the residence.

### i. The Protective Sweep Exception Applies Even When the Suspect is Not Formally Arrested.

█ From the record in this case, it is unclear when Revenaugh was formally placed under arrest. However, it is undisputed that no formal arrest took place until after Deputy Miller conducted the protective sweep of the residence. In fact, according to Deputy Miller's testimony at the preliminary hearing, Revenaugh was not even handcuffed and placed in the police vehicle until after the protective sweep. While Revenaugh had not been placed under arrest or handcuffed, it is clear that he was nevertheless in a custodial situation at the time the protective sweep took place. Deputy Miller testified that after he ordered Revenaugh and the others out of the house, he called his reserve deputy over to watch the suspects. Additionally, Deputy Miller had given Revenaugh his *Miranda* warnings prior to asking whether anyone else was in the residence. These facts make it apparent that Revenaugh was not free to leave and was, for all relevant purposes, in the custody of the law enforcement officers. Therefore, the question we now ·face is whether the fact that Revenaugh was not formally placed under arrest renders the protective sweep exception to the warrant requirement inapplicable. We hold that it does not.

Although we have not previously addressed this question, other courts have upheld protective sweeps conducted before the suspect is formally arrested. *See e.g., United States v. Meza–Corrales,* 183 F.3d 1116 (9th Cir.1999); *United States v. Garcia,* 997 F.2d 1273, 1282 (9th Cir.1993). In *Meza–Corrales,* the Ninth Circuit upheld a protective sweep conducted while the suspect was held, but not arrested, outside of the residence. In so holding, the court noted that the officers were justified in detaining Meza–Corrales outside of the residence because they had a reasonable suspicion that he was involved in criminal activity that had occurred or was about to occur inside the residence. *Id.* at 1123–24. The court also held that the protective sweep was justified because the officers had a reasonable basis to believe that there were others inside the residence who could pose a threat to the officers, or destroy evidence hidden inside the residence. *Id.* at 1124.

Similarly, Deputy Miller, like the officers in *Meza–Corrales,* had a reasonable belief that Revenaugh was involved in criminal activity that had occurred or was about to occur inside the residence and Deputy Miller was clearly justified in detaining Revenaugh outside. Therefore, under the facts of this case, any distinction between a "detention" and a formal arrest of Revenaugh is negligible. The concern for the safety of officers which justifies allowing officers to conduct warrantless protective sweeps following the arrest of a suspect is just as applicable where the suspect has been detained while the officers attempt to ascertain the extent of the situation. In either case, the arresting officers would still have to have a reasonable, articulable suspicion that someone might be in the residence who could pose a threat in order to conduct even a limited protective sweep. Therefore, we hold that the protective sweep exception to the warrant requirement is not rendered inapplicable to this case simply because Revenaugh was detained rather than formally arrested at the time the protective sweep occurred.

### ii. The Protective Sweep Exception Applies When the Suspect is Arrested/Detained Outside of the Residence.

█ Although neither this Court nor the United States Supreme Court has addressed

this issue, the Ninth Circuit has held that the protective sweep exception also applies when the arrest occurs outside of a residence. *See United States v. Hoyos*, 892 F.2d 1387, 1397 (9th Cir.1989). In *Hoyos*, the Ninth Circuit held that even if a suspect is arrested outside of his residence, a protective sweep is justified if the officers possess the necessary reasonable, articulable suspicion that someone may be on the premises who could either destroy evidence or pose a threat to officers. *Id.* In so holding, the Ninth Circuit reasoned that:

> Hoyos' contention that the protective sweep exception to the requirement of a search warrant to enter a residence does not apply if the arrest occurs *outside* is not supported by any authority. This is not surprising because the distinction is logically unsound. If the exigencies to support a protective sweep exist, whether the arrest occurred inside or outside the residence does not affect the reasonableness of the officer's conduct. A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another. The likelihood of the destruction of evidence is the same whether the arrest is indoors or in an outside area within the sight or hearing range of an accomplice within the residence.

*Hoyos*, 892 F.2d at 1397. We agree with the reasoning of the Ninth Circuit and therefore hold that the "protective sweep" exception to the warrant requirement applies when the suspect is arrested/detained outside the residence, provided that the officers have the requisite reasonable, articulable suspicion necessary to support the sweep. Having determined that the protective sweep exception is applicable to the facts of this case, we now turn to the question of whether Deputy Miller possessed a reasonable, articulable suspicion sufficient to justify his warrantless entry into Revenaugh's residence.

### iii. Deputy Miller Had a Reasonable, Articulable Suspicion Sufficient to Justify His Warrantless Entry Into Revenaugh's Residence.

■ In *Maryland v. Buie*, the United States Supreme Court held that the reasonable, articulable suspicion standard for a protective sweep required "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. Revenaugh argues that this standard was not met by Deputy Miller because Deputy Miller admittedly had no evidence that someone else was in the residence. However, this argument fails to recognize that while Deputy Miller may not have had any absolute proof that someone else was inside the residence, Deputy Miller still set forth articulable facts, based on his knowledge and experience which led him to believe that someone else might be in the house. *See e.g., United States v. Hoyos*, 892 F.2d 1387, 1395 n. 6 (9th Cir.1989). When Deputy Miller approached the residence, he saw three men apparently engaged in a marijuana operation. After he yelled "Stop!" they immediately retreated into the house and slammed the door. Even though the three men Deputy Miller saw initially were detained by deputies and Miller had no indication that someone else was in the residence, Miller stated that he believed a protective sweep was necessary. According to his testimony at the preliminary hearing, which the district judge found credible, this belief was based on the fact that he could not see into the house, that Revenaugh had retreated into the house after Miller had yelled "Stop," that he was apparently dealing with a marijuana operation which, in his training and experience, often involved paranoid people and "quite a few weapons," and that he had been in the process of investigating apparent bullet holes in the neighboring business.

While any one of these facts, taken individually, would not rise to the level of reasonable suspicion, the combination of the circumstances set forth here, rises to a level of a reasonable, articulable suspicion that someone might be in the residence who could pose a threat to the officers on the scene, and the district judge was justified in so holding. Therefore, we hold that Deputy Miller's first warrantless entry into Revenaugh's resi-

dence falls within the protective sweep exception to the warrant requirement and any evidence discovered during that sweep was properly included in the application for the search warrant.

## B. The Search Pursuant to the Warrant Was Independent of the Tainted Evidence Discovered at the Revenaugh Residence.

 Revenaugh argues that the warrant issued by the magistrate judge was not based upon evidence independent from that discovered during the second warrantless entry into his residence because the information obtained from that entry was included in the affidavit supporting the request for the search warrant. Thus, he argues that the warrant was improperly based on an unconstitutional search and should not have been issued. For support of his argument, Revenaugh cites to the United States Supreme Court case of *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Murray*, federal agents had illegally entered a warehouse belonging to the defendant. In the course of that illegal entry, the agents discovered large quantities of marijuana. They then proceeded to seek a search warrant. However, none of the information obtained in the illegal entry was used in the application for the search warrant. In the course of its opinion, the Court stated that:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if ... information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Murray*, 487 U.S. at 542, 108 S.Ct. at 2536, 101 L.Ed.2d at 483-84. Revenaugh argues for a literal interpretation of this language which, in turn, would require the suppression of the evidence obtained pursuant to the search warrant because illegally obtained information was included in the application for the warrant. However, we reject this literal interpretation of *Murray*. Instead, we join

the majority of courts which have considered this issue and hold that the above quoted language was intended only to mean that a search warrant is not validly issued if, once the illegally obtained evidence is excluded from the evidence presented to the magistrate, there is insufficient information to provide the probable cause necessary for the issuance of a warrant. *See e.g., People v. Weiss*, 20 Cal.4th 1073, 86 Cal.Rptr.2d 337, 978 P.2d 1257, 1261–63 (1999) (listing numerous state and federal cases rejecting a literal interpretation of *Murray*). Therefore, we must next consider the validity of the search warrant itself.

 In determining the validity of a search warrant whose underlying application contains illegally obtained information, the ultimate question is whether "the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause existed for the issuance of the search warrant." *Doe v. State*, 131 Idaho 851, 853, 965 P.2d 816, 818 (1998) (quoting *State v. Cada*, 129 Idaho 224, 228, 923 P.2d 469, 473 (Ct. App.1996)); *see also State v. Johnson*, 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986). Additionally, the United States Supreme Court has stated that in determining the validity of a search warrant "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *see also State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). Furthermore, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *Lang*, 105 Idaho at 684, 672 P.2d 561.

Applying these standards to the determination of the validity of the search warrant issued for Revenaugh's house, it must first be noted that it is undisputed that the second

warrantless entry by Deputy Miller was unconstitutional. The district judge determined that Deputy Miller should have sought a search warrant before that entry and the State has not appealed that finding. Consequently, anything discovered during that illegal search (i.e. the personal observations of Miller as to the numerous marijuana plants inside the closed room of Revenaugh's residence) must be excluded from the determination of whether probable cause existed to support the warrant. *Johnson,* 110 Idaho at 526, 716 P.2d at 1298; *Cada* 129 Idaho at 228, 923 P.2d at 473. However, under the facts in this case, the information presented to the magistrate, exclusive of the information obtained from the illegal search, contained adequate facts from which the magistrate could have concluded that probable cause existed. Deputy Miller gave an oral affidavit to the magistrate. According to the transcript of that oral testimony, the following information was presented to the magistrate, exclusive of any information obtained in the illegal search: As he approached the residence, Deputy Miller observed three men surrounding two large, black garbage bags and one clear plastic baggie. He also observed that the clear plastic baggie contained a green, leafy substance. Additionally, he testified that he could smell the odor of marijuana emitting from the house. Finally, during the protective sweep, Deputy Miller noticed what appeared to be several marijuana cigarettes and marijuana paraphernalia on a counter in the residence.

Clearly, these facts provide sufficient information for the magistrate to have concluded that there was a fair probability that contraband or evidence of a crime would be found at the place to be searched. Therefore, we hold that sufficient probable cause existed to support the issuance of the search warrant and that the search warrant was issued independent of the evidence initially discovered during the second, illegal, search of Revenaugh's home.

## IV.

### CONCLUSION

In conclusion, because we find that Deputy Miller had a reasonable, articulable suspicion that someone might be in the residence who could pose a threat to the officers on the scene, we uphold the district judge's determination that Deputy Miller's initial entry into the residence falls within the protective sweep exception to the warrant requirement. Consequently, information obtained during the protective sweep was properly included in the application for the search warrant. Additionally, we hold that after excluding the illegally obtained information from the search warrant application, the remaining information contained adequate facts from which the magistrate could have concluded that probable cause existed for issuance of the search warrant. Accordingly, we affirm the district judge's order denying Revenaugh's motion to suppress the evidence seized pursuant to the search warrant.

Justices SILAK, SCHROEDER, WALTERS, and KIDWELL, concur.