37 P.3d 6

STATE of Idaho, Plaintiff–Appellant–
Cross–Respondent,

v.

Joey SCHUMACHER, Defendant–
Respondent–Cross–Appellant.

No. 25194.

Court of Appeals of Idaho.

Sept. 28, 2001.

Review Denied Dec. 19, 2001.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Fred R. Palmer, Sandpoint, for respondent.

LANSING, Judge.

The State brings this interlocutory appeal from the district court's order suppressing much of the evidence upon which the State relied in charging the defendant with trafficking in marijuana. The defendant cross-appeals from orders denying his motion to dismiss the case on the ground that the statute under which he is charged is unconstitutionally vague and denying his motion to quash the order binding him over for trial.

## I.

Joey Schumacher came to the attention of law enforcement as a result of an informant's tip indicating that Schumacher might be growing marijuana in a barn on Schumacher's property in a rural area of Bonner County. After conducting an investigation, officers obtained a warrant to search the barn. There, the agents found a marijuana grow operation. Schumacher was arrested and charged with trafficking in marijuana by possessing fifty or more marijuana plants or five pounds or more of marijuana. Idaho Code § 37–2732B(a)(1)(B). Schumacher subsequently filed a motion to suppress evidence found in the search on the basis that the warrant was issued without probable cause. He also moved for dismissal of the charges and, alternatively, asked the district court to vacate the magistrate's order binding Schumacher over for trial. The district court denied Schumacher's request for dismissal or quashing of the magistrate's order, but the court granted his suppression motion in part. The State brings this interlocutory appeal from the suppression order, and Schumacher

cross-appeals from the denial of his motions to dismiss and to quash the bind over order.

## II.

### A. Suppression Order

We begin with consideration of the suppression order, which was based upon the district court's determination that portions of the evidence submitted to the magistrate in support of the search warrant had been unlawfully obtained, and that the remaining evidence was insufficient to demonstrate probable cause.

 When reviewing a decision on a motion to suppress evidence for constitutional violations, we defer to the trial court's findings of fact if they are supported by substantial, competent evidence, but the question whether, on the facts found, a search complied with constitutional standards is a question of law over which we exercise free review. *State v. Holton,* 132 Idaho 501, 503, 975 P.2d 789, 791 (1999); *State v. Silva,* 134 Idaho 848, 852, 11 P.3d 44, 48 (Ct.App. 2000); *State v. Rusho,* 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986). In this case, the facts are uncontroverted, and we are, therefore, presented with only issues of law regarding the application of constitutional standards.

The evidence presented to the magistrate in support of the warrant application was as follows. A citizen informant contacted law enforcement officers about a young couple who had recently purchased residential property in a rural area. The informant told Special Agent Walt Richard of the Idaho Criminal Investigation Bureau that the couple had covered the floors and walls of a barn on the property with black plastic, had boarded some of the windows and entries to the barn, and had installed additional power lines to that building. He said that the couple did not appear to have any employment, were always home, were standoffish, and did not associate with any of their neighbors. The informant also said that he had twice detected a strange odor coming from the Schumacher's property. Agent Richard determined from public records that a young couple, Schumacher and his wife, had pur-

chased the property about one year earlier. Investigating officers then used a thermal imaging camera to videotape the Schumacher property from the air and from the ground around the perimeter of the property. Such cameras detect infrared heat radiation and are able to detect the relative amount of heat that is radiated by different surfaces. The resulting video images show objects in varying shades of gray depending upon the heat radiation detected, thereby disclosing whether one object or building, or area of a building, is radiating more heat or less heat than another. Both videotapes of Schumacher's property revealed an unusually high amount of heat from the apparently unoccupied barn. Agent Richard concluded that the source of this heat could be thermal lamps being used to grow marijuana indoors.

With this information in hand, Agent Richard asked for the assistance of Officer Terry Ford of the Idaho State Police to further the investigation. Richard asked Ford to conduct a traffic stop of Schumacher's vehicle so that the vehicle could be checked by a drug dog. Richard informed Ford that Schumacher lacked a driver's license and that his vehicle had not been registered in Idaho. While these officers were discussing the case from a vantage point near Schumacher's property, they saw the Schumacher vehicle leaving. Officer Ford stopped the car, which was being driven by Schumacher. Ford requested a license and registration check from dispatch and then led his drug dog around the vehicle. The dog alerted on both doors of the car, and Officer Ford then searched the automobile. This search yielded a small quantity of marijuana. Schumacher was arrested for possession of marijuana and was placed in Officer Ford's patrol car. Shortly thereafter, Agent Richard, who had been observing the stop from a distance, arrived and questioned Schumacher. Schumacher responded with incriminating statements that acknowledged his marijuana cultivation. Based on the foregoing information, Agent Richard obtained a search warrant. When police executed the warrant they found marijuana plants in various stages of growth along with other evidence.

On his suppression motion, Schumacher argued that the thermal imaging evidence and all of the evidence obtained as a result of the vehicle stop was unlawfully obtained and therefore could not be used to support issuance of the warrant. The district court held that the use of thermal imaging technology constitutes a search, and the court therefore suppressed the thermal imaging evidence because it was obtained without a warrant. The district court upheld the validity of the traffic stop but suppressed Schumacher's statements made at the scene on the ground that they were involuntary. The district court then concluded that the remaining lawfully obtained evidence that had been offered in support of the search warrant was insufficient to demonstrate probable cause for a search of Schumacher's barn. Consequently, all evidence found in execution of the warrant was suppressed.

### 1. Thermal imaging

 The Fourth Amendment prohibits warrantless searches of premises where the defendant has a reasonable expectation of privacy unless an exception to the warrant requirement applies. *State v. Holton*, 132 Idaho 501, 503–04, 975 P.2d 789, 791–92 (1999); *State v. Schaffer*, 133 Idaho 126, 129, 982 P.2d 961, 964 (Ct.App.1999). Here, it is undisputed that Schumacher had a reasonable expectation of privacy in his barn, that the thermal imaging was conducted without a warrant, and that no warrant exception is applicable. The State has contended, however, that the use of thermal imaging is not a search and therefore is not subject to Fourth Amendment restraints.

At the time of Schumacher's suppression motion and until a date after the oral argument in this appeal, the United States Supreme Court had not addressed this issue. It has, however, recently issued a decision that resolves the question. In *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), a divided Supreme Court held that thermal imaging amounted to a search. In that case, government agents had scanned the exterior of the defendant's home late at night. They found that some of the walls were emitting more heat than other portions of the home and more heat than other homes in the area. Based on the thermal imaging and other evidence, officers obtained a search warrant and discovered marijuana being grown in the home. The Supreme Court majority held that "obtaining by sense—enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area' constitutes a search—at least where (as here) the technology in question is not in general public use." *Id.* at ——, 121 S.Ct. at 2043, 150 L.Ed.2d at 102 (citation omitted).

Based upon this determination by the United States Supreme Court, the thermal imaging of Schumacher's barn was an unlawful search, and the resulting evidence may not be used to support the issuance of a search warrant or employed against Schumacher in a trial. The district court's suppression of the thermal imaging evidence is therefore affirmed.

### 2. The traffic stop

Schumacher's suppression motion included a contention that the stop of his vehicle was an unlawful detention. The district court rejected this argument, and Schumacher raises the issue in his cross-appeal.

 A traffic stop is a seizure of the vehicle's occupants, which implicates the Fourth Amendment prohibition of unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). An officer may lawfully stop a suspect for investigative purposes only if the officer has a reasonable suspicion that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *State v. DuValt*, 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *State v. Sevy*, 129 Idaho 613, 615, 930 P.2d 1358, 1360 (Ct.App.1997). The officer's suspicion must be more than a mere hunch; it must be based on specific articulable facts and the rational inferences following from those facts.

*Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *State v. Gallegos*, 120 Idaho 894, 896–97, 821 P.2d 949, 951–52 (1991). The totality of the circumstances known to the officer at the time of the stop must yield a particularized and objective basis for suspecting that the detainee is or has been engaged in illegal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628–29 (1981); *Sevy, supra; State v. McAfee*, 116 Idaho 1007, 1009, 783 P.2d 874, 876 (Ct.App.1989). The subjective motive for a stop, such as the desire to search for drugs, is irrelevant if the officer possesses an objectively reasonable basis for making the stop. *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App.1990); *State v. Law*, 115 Idaho 769, 772, 769 P.2d 1141, 1144 (Ct.App.1989).

■ The State offers three justifications for the investigative stop of Schumacher's vehicle: suspicion that the vehicle was not registered in accordance with Idaho law, suspicion that Schumacher was operating the vehicle without a driver's license, and suspicion that Schumacher was growing marijuana. Because we find it dispositive, we consider only the first of these three justifications.

Idaho Code §§ 49–401A(1) and 49–401B(1), (5), when read together, require that residents of this state who own motor vehicles obtain Idaho registration for the vehicles before they are operated upon any highway in this state, subject to exceptions not relevant here.[1] Idaho Code § 49–119(11) defines "resident" as follows:

"Resident" means for purposes of vehicle registration, titling, a driver's license or an identification card, a person whose domicile has been within Idaho continuously for a period of at least ninety (90) days, excluding a full-time student who is a resident of another state.

Thus, a person who moves to Idaho and owns a vehicle in this state has ninety days after the change of domicile within which to obtain Idaho registration for vehicles.

At the time that Schumacher's vehicle was stopped on suspicion of a violation of the foregoing statutes, the vehicle was displaying Montana license plates. The officers had information that Schumacher had purchased a residence in Idaho about a year earlier and had arranged for utility service to the residence in his name. Agent Richard testified that he had seen the vehicle, a gold Thunderbird, parked at the Schumacher home on prior occasions, and Officer Ford testified that he had seen the automobile in or near several towns in the area numerous times over the past four or five months. Based upon this information, the officers could reasonably suspect that the vehicle belonged to Schumacher and that Schumacher had resided in Idaho for more than ninety days without registering his vehicle in this state. Therefore, they acted lawfully in stopping his vehicle to investigate this suspected offense.

### 3. Schumacher's statements to police

We next consider the district court's determination that Schumacher's statements to police must be suppressed because they were involuntarily given. The incriminating state-

---

1. Idaho Code § 49–401A(1) states, in part:

 Every owner of a motor vehicle, trailer or semitrailer who intends to operate the vehicle upon any highway in this state shall before the same is so operated, apply to a county assessor and obtain registration for vehicles in sections 49–402(1) through (3), 49–402A, 49–402B and 49–422, Idaho Code.

 Idaho Code § 49–401B reads, in part:

 (1) Application for the registration of a vehicle required to be registered under the provisions of section 49–401A, Idaho Code, shall be made to the assessor or the department as specified in that section, by the owner upon the appropriate form. Every application shall be signed by the owner and contain his residence address....

 ....

 (5) Every owner of a vehicle registered by a county assessor shall give his principal residence or domicile address to the assessor so that the proper county can be entered upon the registration. Failure to do so shall be unlawful. The department shall then attribute the registration, and all fees to be apportioned to the highway distribution account, to the county of residence regardless of the county in which the registration occurred.... For the purposes of vehicle registration, a person is an actual and permanent resident of the county in which he has his principal residence or domicile. A principal residence or domicile shall not be a person's workplace, vacation, or part-time residence.

ments at issue were given when Schumacher was questioned after his arrest at the scene of the traffic stop. After advising Schumacher of his *Miranda* rights,[2] Agent Richard began the interrogation by telling Schumacher: "One of the things that's gonna happen is we're gonna be serving a search warrant at your residence today. I know about the marijuana that you're growing in your barn. And that's my whole goal is to possibly serve a search warrant at your residence." The agent then asked about the extent of involvement of Schumacher's wife in the marijuana growing operation. He told Schumacher that the police would be taking fingerprints and that if they found his wife's fingerprints on items associated with the growing marijuana, they would probably charge her as well. The officer continued by asking if Schumacher had any children at home, suggesting that arrangements would have to be made for care of the children if both Schumacher and his wife were jailed. Schumacher responded that his wife had "no knowledge of this." Later in the conversation, Schumacher told Agent Richard how many plants he was growing and how many lamps he had in use. The district court concluded that Agent Richard's implication that the officers already had a search warrant when, in fact, none had yet been obtained, and his reference to the possibility of arresting Schumacher's wife and leaving Schumacher's children without parental care, were improper tactics that rendered Schumacher's response involuntary.

■■■■ It is a violation of the Due Process Clause of the Fourteenth Amendment for the State to use against a criminal defendant a statement that the defendant made involuntarily. *Miller v. Fenton*, 474 U.S. 104, 109–10, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405, 410–11 (1985); *Haynes v. Washington*, 373 U.S. 503, 514–15, 83 S.Ct.

1336, 1343–44, 10 L.Ed.2d 513, 521–22 (1963); *State v. Doe*, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct.App.1998). The rule disallowing the use of involuntary confessions "applies to any confession that was the product of police coercion, either physical or psychological, or that was otherwise obtained by methods offensive to due process." *State v. Doe*, 130 Idaho 811, 814, 948 P.2d 166, 169 (Ct.App. 1997). In determining whether a statement was involuntary, the inquiry is whether the defendant's will was overborne by police coercion. *Arizona v. Fulminante*, 499 U.S. 279, 286, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 315–16 (1991); *Colorado v. Connelly*, 479 U.S. 157, 163–67, 107 S.Ct. 515, 519–22, 93 L.Ed.2d 473, 481–84 (1986); *Doe*, 131 Idaho at 713, 963 P.2d at 396; *State v. Davila*, 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct.App. 1995). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484.

■■■■ Schumacher complains that two components of Agent Richard's interrogation amounted to overreaching that rendered Schumacher's responsive comments involuntary. First, he contends that Richard's statement that the police would be serving a search warrant on the Schumacher property that day improperly elicited Schumacher's confession by deceiving him into believing that a search warrant was about to be served. Although we agree that Agent Richard's statement falsely implied that the police already were in possession of a search warrant, we do not agree with Schumacher's conclusion that this police tactic was impermissible or coercive in the context of an interrogation aimed at eliciting an incriminatory statement.[3] Within limits, deceit and subterfuge are within the "bag of tricks" that

---

**2.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** This context must be contrasted with a circumstance where police misrepresent that they possess a warrant in order to obtain consent to enter or search premises. Permission for a search is deemed involuntary if it was induced by a claim that the officer possessed a search warrant; in that circumstance the permission is a submission

to the officer's assertion of authority rather than voluntarily extended consent. "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search." *Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 803 (1968).

police may use in interrogating suspects. As we explained in *Davila:*

> Deceptive police practices do not necessarily create coercion which would render a suspect's subsequent confession involuntary and excludable. Confessions derived during the course of interrogations have been upheld as voluntary, notwithstanding misrepresentations of facts by the police, such as telling a defendant that his fingerprints were found on physical evidence or at the scene.
>
> . . . .
>
> Courts have uniformly accepted the police's technique of telling a suspect they have found some incriminating evidence to elicit statements from a suspect on the view that an innocent person would not be induced to confess by such police deception. However, we acknowledge that courts are much less likely to tolerate misrepresentations of law.

*Davila* at 892, 908 P.2d at 585. (Citations omitted.) If, as in *Davila*, police are allowed to falsely claim to have found evidence linking a suspect to a crime, it follows that they may falsely claim that they will be searching and finding evidence of the suspect's guilt. In neither case would an innocent person be induced to confess by such claims. Here, Agent Richard's statement may have fooled Schumacher into believing there was no point in remaining silent or denying his guilt, but it did not threaten him with any adverse consequence if he remained silent. We conclude that the deception was not coercive.

 The second component of the interrogation that Schumacher characterizes as coercive is Agent Richard's statement that Schumacher's wife would be arrested if police found evidence of her complicity and the agent's reference to Schumacher's children. Again, we find Schumacher's argument unpersuasive. It is true that threats to prosecute a defendant's loved one when there is no legitimate basis to do so may be coercive and can render a confession involuntary. In *State v. Davis*, 115 Idaho 462, 464–65, 767 P.2d 837, 839–40 (Ct.App.1989), for example, we held that a confession was involuntary where a prosecutor had told the defendant that his mother was being held due to the

defendant's refusal to confess and where the charges against the mother were later dismissed for lack of evidence. However, a suspect's confession is not involuntary merely because it was motivated by the desire to prevent a good faith arrest of a loved one. *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir.1986); *United States v. Charlton*, 565 F.2d 86, 89 (6th Cir.1977). *Cf. Mata v. State*, 124 Idaho 588, 594–95, 861 P.2d 1253, 1259–60 (Ct.App.1993) (holding that defendant's guilty plea was not shown to be involuntary where he contended that he felt compelled to plead guilty in exchange for the release of his wife from custody so that she could take care of their children).

 In this case, the threat to arrest Schumacher's wife was not unjustified. Agent Richard expressly conditioned that prospective arrest upon the police finding physical evidence linking Schumacher's wife to the marijuana cultivation. Such evidence, if found, would have justified her arrest. Of equal importance, Agent Richard did not suggest that Schumacher could *prevent* his wife's arrest by confessing, so the agent's comment did not pressure Schumacher to make a statement.

 Agent Richard also referred to Schumacher's children, inquiring whether they had a place to go if both parents were arrested. This was a legitimate point of inquiry to determine whether there were children whose care would have to be arranged if the anticipated search of Schumacher's barn yielded the results expected by Richard. Any risk of adverse consequences for the Schumacher children was created by Schumacher's illegal activities, not by the police, and Agent Richard did not imply that a confession from Schumacher would avoid this potential consequence for his children. "[P]sychological pressures bearing on a defendant that are not created by police conduct do not require the suppression of a confession." *State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct.App. 1995). Schumacher has not shown that Agent Richard's comments about Schumacher's wife and children were coercive or caused Schumacher to confess involuntarily. Therefore, we hold that the trial court erred

in suppressing Schumacher's self-incriminating statements.

#### 4. Probable cause to support the search warrant

■ After suppressing Schumacher's statements to Agent Richard and the thermal imaging evidence, the district court held that the remaining evidence presented in support of the application for the search warrant was insufficient to demonstrate probable cause, and therefore all evidence acquired in execution of the warrant was suppressed. We have reversed the suppression of Schumacher's statements but affirmed the suppression of the thermal imaging evidence. We therefore must turn to the question whether there was probable cause for issuance of the search warrant absent the evidence acquired through thermal imaging. *See State v. Revenaugh,* 133 Idaho 774, 779, 992 P.2d 769, 774 (1999); *State v. Johnson,* 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986); *State v. Cada,* 129 Idaho 224, 228, 923 P.2d 469, 473 (Ct. App.1996). The probable cause determination is "a practical, common sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Revenaugh, supra* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

■ The evidence presented to the magistrate in support of the search warrant in this case showed that Schumacher was in possession of marijuana, but in an amount consistent with personal use rather than trafficking. Schumacher's statements to Agent Richard, however, included an explicit confession that he was cultivating marijuana. These admissions, together with the discovery of marijuana in Schumacher's automobile and the information from the informant, established probable cause to believe that contraband and evidence of marijuana cultivation would be found in Schumacher's outbuilding. It follows that the search warrant was supported by probable cause, and the district court erred in suppressing evidence derived from execution of the warrant.

#### B. Constitutionality of Idaho Code § 37-2732B(a)(1)

The statute under which Schumacher was charged, I.C. § 37–2372B(a)(1), provides in part:

Any person who knowingly manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, one (1) pound of marijuana or more, or twenty-five (25) marijuana plants or more, as defined in § 37–2701, Idaho Code, is guilty of a felony, which felony shall be known as "trafficking in marijuana." If the quantity of marijuana involved:

. . . .

(B) is five (5) pounds or more, but less than twenty-five (25) pounds, or consists of fifty (50) marijuana plants or more but fewer than one hundred (100) marijuana plants, regardless of size or weight of the plants, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of three (3) years and fined not less than ten thousand dollars ($10,000)....

Schumacher contends that this statute is unconstitutionally vague because the word "plant" is not defined either in this statute or in § 37–2701.[4] In particular, he asserts there is unconstitutional vagueness because the statutes do not establish whether a "plant" must have roots. The issue is of import because the number of plants Schumacher was accused of growing included twenty-one cuttings that had been placed in a growing medium but had no observable roots. The district court construed the statute to require existing roots in order for a cutting to qualify as a plant and held that the statute, thus construed, was not unduly vague. On that basis, the district court denied Schumacher's motion to dismiss. Schumacher posits error in that ruling as part of his cross-appeal.

■ A statute is unconstitutionally vague if it " 'fails to give a person of ordinary intelligence fair notice that his contemplated

---

**4.** Idaho Code § 37–2701 defines "marijuana" but not "plant" or "marijuana plant."

conduct is forbidden by the statute' and permits arbitrary or discriminatory enforcement." *State v. Bitt,* 118 Idaho 584, 585, 798 P.2d 43, 44 (1990) (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954)). Although some ambiguity is unavoidable in the English language, a statute that is so unclear that persons "of common intelligence must necessarily guess at its meaning and differ as to its application" is unconstitutionally vague. *Id.* (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). *See also State v. Leferink,* 133 Idaho 780, 783, 992 P.2d 775, 778 (1999). It is also necessary that laws provide adequate standards to those who will enforce them. *Bitt* at 585–86, 798 P.2d at 44–45. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 586, 798 P.2d at 45 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227–28 (1972)). *See also Leferink, supra.*

In the proceedings below, the State took the position that rootless cuttings qualify as "plants" under I.C. § 37–2732B(a)(1). The State therefore charged Schumacher with trafficking in fifty or more marijuana plants even though a horticulturist was unable to observe any evidence of root formation on twenty-one of the sixty-seven "plants" seized from Schumacher's barn. On appeal, the State offers no view as to whether the term "plant" does or does not contemplate the presence of roots, yet argues that "plant" is a word of common usage and is not so vague as to fail to give notice of what is proscribed or to allow impermissible discretion for law enforcement in its application. The State contends that the question whether a cutting is a plant is a question of fact for the jury.

We find the State's position untenable. If given the standardless application advocated by the State, the statute would be unconstitutionally vague because different fact-finders could differ as to its application in identical circumstances. This would be precisely the type of *ad hoc* application, with arbitrary and inconsistent enforcement, that the vagueness doctrine is intended to prevent. Moreover, interpretation of a statute is not a question of fact for a jury but a question of law for resolution by the court. Allowing juries to independently interpret I.C. § 37–2732B(a)(1)(B) would be an abdication of this Court's duty to construe legislative language to determine the law. *See J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n,* 120 Idaho 849, 853, 820 P.2d 1206, 1210 (1991).

An appellate court is obligated to seek an interpretation of a statute that will uphold its constitutionality. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). A statute's possible infirmity for vagueness may be avoided by a judicial construction of the statute that is consistent with legislative intent and comports with constitutional limitations. *Leferink,* 133 Idaho at 784, 992 P.2d at 779; *Cobb,* 132 Idaho at 199, 969 P.2d at 248. When interpreting a statute, we begin with the supposition that the legislature intended the ordinary meaning of the words it used unless a contrary intent is clearly expressed. *Tonahill v. LeGrand Johnson Constr. Co.,* 131 Idaho 737, 740, 963 P.2d 1174, 1177 (1998); *State v. Johnson,* 131 Idaho 808, 809, 964 P.2d 675, 676 (Ct.App.1998). We think it clear that in ordinary usage, the word "plant" contemplates the presence of a root structure. In common parlance, one plant does not immediately become many plants as soon as it is cut into pieces, even if those pieces have been placed in soil or a growing medium. Therefore, we hold that for a cutting to achieve plant status, it must have readily observable evidence of root formation.

Our decision is consonant with those of many federal courts that have been called upon to determine the meaning of "marijuana plant" for purposes of the federal sentencing guidelines. Those courts hold that root formation is necessary for a cutting to be counted as a plant. *See United States v. Robinson,* 35 F.3d 442, 446 (9th Cir.1994); *United States v. Burke,* 999 F.2d 596, 601 (1st Cir.1993); *United States v. Edge,* 989 F.2d 871, 879 (6th Cir.1993); *United States v.*

*Bechtol,* 939 F.2d 603, 605 (8th Cir.1991); *United States v. Eves,* 932 F.2d 856, 860 (10th Cir.1991). As noted by the Sixth Circuit Court of Appeals, this is a "commonsensical, easy to administer test." *Edge,* 989 F.2d at 877. In applying it, "a court must be permitted to use its eyesight and common sense to conclude that it has before it a plant with roots." *Burke,* 999 F.2d at 600.

With I.C. § 37–2732B(a)(1) having been given this interpretation, there is no merit in Schumacher's argument that the statute is void for vagueness.

## C. Probable Cause to Bind Schumacher Over for Trial

In the alternative to his motion to dismiss the charge on the ground that I.C. § 37–2732B(a)(1) is unconstitutionally vague, Schumacher moved to quash the order binding him over to the district court. He reasoned that, if the twenty-one rootless cuttings were not plants within the meaning of the statute, then the police found only forty-six plants in Schumacher's barn, and he could not be bound over on the original charge of trafficking in fifty or more marijuana plants. The district court denied this motion and, in doing so, commented that "notwithstanding the absence of existing roots, an 'attempt' to manufacture marijuana plants is sufficient to bind over to district court on Idaho's trafficking-mandatory sentences statute." On appeal, Schumacher argues that this order was erroneous because there is no such crime as attempted trafficking.

 We need not address the issue posed by Schumacher, for after reduction of the number of "plants" found to be in his possession from sixty-seven to forty-six, he could still properly be bound over for trafficking in marijuana pursuant to I.C. § 37–2732B(a)(1)(B).[5] This is so because he was charged in the alternative with trafficking by weight of marijuana—five pounds or more—a charge that is not dependent upon the number of plants with roots. Additionally, he could be charged with trafficking under I.C. § 37–2732B(a)(1)(A) based upon his possession of twenty-five or more but fewer than fifty marijuana plants. This is the same offense with which he was originally charged, but carries a lesser mandatory minimum sentence because of the lesser number of marijuana plants involved. *See* I.C. §§ 37–2732B(a)(1)(A) and (B). A felony charge may be amended so long as the amendment does not prejudice a substantial right of the defendant and does not charge an offense other than that for which the defendant has been held to answer. I.C. § 19–1420; *State v. LaMere,* 103 Idaho 839, 655 P.2d 46 (1982). Therefore, we affirm the district court's denial of Schumacher's motion to quash the magistrate's order binding Schumacher over for trial.

## D. Conclusion

The district court's orders suppressing Schumacher's statements to police and suppressing evidence found pursuant to the search warrant are reversed. The orders for suppression of the thermal imaging evidence and the district court's order denying suppression of physical evidence found during the traffic stop are affirmed. The district court's denial of Schumacher's motions to dismiss the charge and to quash the order binding Schumacher over for trial are also affirmed. This matter is remanded to the district court for further proceedings.

Chief Judge SCHWARTZMAN and Judge Pro Tem HART concur.

---

**5.** An order binding a defendant over for trial on a felony charge requires only a showing that a public offense has been committed and that there is probable cause to believe that the defendant committed the offense. Idaho Criminal Rule 5.1(b).