**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37582**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 48 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 10, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ARNOLDO ROJAS-TAPIA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. John K. Butler, District Judge.

Judgement of conviction for trafficking in marijuana, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Arnoldo Rojas-Tapia appeals from the judgment of conviction entered upon his conditional guilty plea to trafficking in marijuana. Specifically, Rojas-Tapia asserts the district court erred in denying his motion to suppress evidence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In September 2009, Officer Scott Ward was executing a search warrant on premises in Gooding County, where it was believed a small marijuana grow was being conducted. Specifically, the search warrant was for a trailer on the premises identified as "Trailer B" and the property around that trailer. Officer Ward later testified that prior to execution of the warrant, officers did not know who lived at the residence or if the occupants had any weapons or dogs, but believed there to be at least two to three people living in the trailer.

1

When Officer Ward and others arrived to execute the warrant they saw a Hispanic male, later identified as Arnoldo Rojas-Tapia, outside Trailer B in a "garden area." While Officer Ward and another officer were "securing" Rojas-Tapia, they observed two other Hispanic males exiting what was described as a "rock building" on the premises, approximately ten yards from Trailer B. The two men were handcuffed, searched, and removed to the front of the house. According to Officer Ward's testimony, in order to "secure the scene" and ensure officer safety, several officers entered the rock building to "make sure there was nobody in it" and that no one would come out of the building brandishing a gun. Inside the rock building, officers noticed multiple drying marijuana plants. Officer Ward then obtained a search warrant for the rock building and the subsequent search uncovered approximately forty hanging marijuana plants, various other marijuana plant parts, and loose marijuana. The officers found additional marijuana and accompanying paraphernalia during a search of the areas covered by the original warrant.

Rojas-Tapia was charged with trafficking in marijuana, Idaho Code § 37-2732B(1), and failure to affix a tax stamp, I.C. § 63-4205. He filed a motion to suppress evidence, contending, among other things, that the search of the rock house had been unconstitutional. Following a hearing, the district court denied the motion to suppress. Rojas-Tapia entered a conditional guilty plea to trafficking in marijuana, reserving his right to appeal the denial of his suppression motion.

## II.

## ANALYSIS

Rojas-Tapia contends that the district court erred in denying his motion to suppress on the basis that the state failed to meet its burden to prove that officers reasonably believed there was a present threat to the officers in the rock building which justified their protective sweep of that building.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment, as well as Article I, § 17 of the Idaho Constitution, protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The United States Supreme Court has held that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313 (1972). *See also State v. Araiza*, 147 Idaho 371, 374, 209 P.3d 668, 671 (Ct. App. 2009); *State v. Reynolds*, 146 Idaho 466, 469, 197 P.3d 327, 330 (Ct. App. 2008). Such entries and other searches conducted without a warrant are presumed to be unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980); *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996), but there are a few carefully delineated exceptions to this presumption, *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971); *State v. Brauch*, 133 Idaho 215, 218, 984 P.2d 703, 706 (1999). The state bears the burden to show that a warrantless search either fell within one of these well-recognized exceptions to the warrant requirement or was otherwise reasonable under the circumstances. *Reynolds*, 146 Idaho at 470, 197 P.3d at 331; *Martinez*, 129 Idaho at 431, 925 P.2d at 1130.

One recognized exception to the warrant requirement for governmental searches is the protective sweep, which the United States Supreme Court first addressed in *Maryland v. Buie*, 494 U.S. 325 (1990). In that case, police obtained arrest warrants for Buie and another man, who were suspects in an armed robbery. Six or seven officers went to Buie's house to execute the warrant. One officer shouted into the basement, ordering anyone there to come out. Buie responded and emerged from the basement, at which point he was arrested. Thereafter, an officer entered the basement to determine if anyone else was there, and while in the basement he saw incriminating evidence in plain view.

The United States Supreme Court considered what level of justification was required for the officer to legally enter the basement, after Buie had been arrested, to determine whether others were present. Relying on *Terry v. Ohio*, 392 U.S. 1 (1968) and *Michigan v. Long*, 463 U.S. 1032 (1983), the Court concluded that the "reasonable, articulable suspicion" standard, which lies between the two extremes advocated by the parties, best met constitutional strictures. The Court held that this standard required "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that

the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. The Court cautioned that the search must be narrowly confined to a "cursory inspection of those spaces where a person may be found." *Id*. at 335. Further, the sweep may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id*. at 335-36.

Although *Buie* involved an in-home arrest, courts have applied the doctrine when police are executing a search warrant so as to allow a protective sweep of areas beyond the boundaries allowed by the warrant. In *State v. Schaffer*, 133 Idaho 126, 982 P.2d 961 (Ct. App. 1999), this Court followed suit and concluded that the same officer safety considerations underlying the *Buie* decision apply equally whether the officers are present to effectuate an arrest or to conduct a search. Therefore, this Court held that the protective sweep warrant exception applies under Article I, § 17 of the Idaho Constitution when officers are executing a search warrant, provided that the criteria enunciated in *Buie* are met. *Id*. at 130-31, 982 P.2d at 965-66.[1]

In addressing Rojas-Tapia's motion to suppress, the district court honed in on the question of whether officers in this case had a reasonable and articulable suspicion that other persons might be in the rock building and pose a danger to officers such that a protective sweep was justified. The court first noted that there is no *per se* drug case exception to the reasonable and articulable suspicion requirement; however, the type of offense suspected and the officers' experience with such offenses are relevant factors when considering the threat potential to officers on the premises. *See State v. Slater*, 133 Idaho 882, 887, 994 P.2d 625, 630 (Ct. App. 1999). Turning to the facts of the case, the court noted several factors: The distance between Trailer B (described in the warrant) and the rock building was approximately 10 yards; Detective Ward had over twenty years' experience in narcotics investigations and testified that, based on this experience, those involved in narcotics often carry guns; Officers had obtained surveillance of Trailer B and the surrounding garden area and had observed growing marijuana plants, which was confirmed as they commenced the search; The officers did not have information as to the identity of the suspects or their criminal history; And the Officers did not know how many

---

[1] *Buie* also authorized a second type of search for officer protection--that incident to an arrest, officers can, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Buie*, 494 U.S. at 334. This type of search is not at issue in this case.

people they would encounter on the premises. While executing the search warrant, the officers observed two Hispanic males come out from the rock building and also observed four vehicles on the premises. Denying the motion to suppress, the court concluded:

> Given the fact that officers had observed two males exit the Rock Building at the time of execution of the search warrant, and given [the] location and proximity of the Rock House to the area where the defendant and others were being detained, a reasonable and prudent law enforcement officer would take precautions to make sure that no other individuals were located within the Rock Building.

On appeal, Rojas-Tapia contends that the only articulable fact supporting the protective sweep was the officers' belief that "people involved in narcotics carry guns" and that contrary to supporting a finding that the officers reasonably believed a search of the rock house was necessary for their safety, officers did not find weapons on the three men they had already detained and did not have any information (either from the detained men or from other sources) that there were others on site and whether any others were armed. Rojas-Tapia is mistaken that the protective sweep was conducted solely on the officers' belief regarding the propensity of persons associated with drugs to carry guns. While this was a factor in the determination, and rightly so pursuant to our decision in *Slater*, 133 Idaho at 887, 994 P.2d at 630, as the district court noted, there were also the facts that the two men had just exited the rock house, the rock house was in relatively close proximity to Trailer B and the area where the officers had detained the three men, and the officers had no knowledge as to the number of people on the premises, nor had any information that would relieve their concerns that any other persons on the premises were armed.

Also, while Rojas-Tapia focuses on the fact that the officers did not know whether there were other persons on the premises, officers need not have *actual knowledge or absolute proof* that someone is lurking in the place to be searched who poses a threat to the officers. *State v. Revenaugh*, 133 Idaho 774, 777, 992 P.2d 769, 772 (1999); *Slater*, 133 Idaho at 887, 994 P.2d at 630. Reasonable suspicion only requires articulable facts and inferences supporting a reasonable belief. *Slater*, 133 Idaho at 887, 994 P.2d at 630. Indeed, that officers in this case did not know how many people were on the premises supports the finding of articulable suspicion that they may be in danger since they had no way of determining that all persons were present and accounted for. *Cf. Schaffer*, 133 Idaho at 131, 982 P.2d at 966 (holding there was not reasonable

5

articulable suspicion that a shed harbored anyone that could be a danger to officers because, among other things, surveillance had been conducted on the premises before the warrant was executed and the one person officers had seen walking near the shed hours earlier, they had also seen leave the premises). Further, there was direct connection to the rock building in this instance--not only was the rock building in relatively close proximity, but officers had seen two men exit from it which left open the possibility that other persons were still secreted inside. *Cf. Schaffer*, 133 Idaho at 131, 982 P.2d at 966 (in invalidating the protective sweep of a shed, noting that once execution of the warrant had commenced officers had not seen anyone in or near the shed).

Accordingly, we conclude that the officers possessed the requisite articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the premises--namely that the persons present on the premises were suspected of drug activity, persons involved in drug activity often carried guns according to testimony by an experienced narcotics officer, the rock house was relatively proximate to the place to be searched, the officers did not have information as to the identity of the suspects or their criminal history, the officers did not know how many people they would encounter on the premises, and the officers had seen two men exit the rock house once the warrant search commenced and multiple vehicles on the premises. *Compare Revenaugh*, 133 Idaho at 778, 992 P.2d at 773 (holding that a protective sweep was valid, because the officer had no idea whether more than the three men he had seen run into the residence were inside, the officer could not see inside the building, the suspects had run away from him into the building, and he was investigating a marijuana operation which, in the officer's experience, often involved paranoid people and "quite a few weapons").

### III.

### CONCLUSION

The district court did not err in determining that officers in this case had a reasonable and articulable suspicion that other persons might be in the rock building and pose a danger to officers such that a protective sweep was justified. Accordingly, the district court properly denied Rojas-Tapia's motion to suppress evidence. Rojas-Tapia's judgment of conviction for trafficking in marijuana is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

6