IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 46805

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, February 2020 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: July 22, 2020** |
| | ) | |
| **CODY LEIGH HANSEN,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Cynthia K. C. Meyer, District Judge.

The district court's order is <u>reversed</u> and <u>remanded</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Mark W. Olson argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Respondent. Ben P. McGreevy argued.

_____

BURDICK, Chief Justice.

This case arises from a probationer's attempt to revoke the consent to searches provided for in his probation agreement. The State appeals from a district court's order granting Cody Leigh Hansen's motion to suppress evidence found during a search of his vehicle. The district court determined that Hansen effectively revoked the consent to be searched he had given as a condition of his probation. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2018, Idaho State Police Sergeant Curt Sproat pulled over a vehicle driven by Cody Leigh Hansen on Interstate 90 after observing a traffic infraction. As Sergeant Sproat approached the vehicle on the passenger side, he saw a passenger in the back seat making "furtive movements." Sergeant Sproat asked Hansen for his license and registration and requested identification from the passengers. Hansen provided his license, but informed Sergeant

1

Sproat that he had not yet registered the vehicle and did not know his home address. He also told Sergeant Sproat that he was on felony probation.

When Sergeant Sproat asked whether there was anything in the vehicle he should know about, Hansen "looked down" and "broke eye contact" with him. Sergeant Sproat became suspicious and he asked Hansen to step out of the vehicle. After Hansen exited the vehicle, he and Sergeant Sproat had a conversation regarding his probationary status. The district court included the relevant portions of the conversation, recorded by the dashboard camera in Sergeant Sproat's patrol car and by his on-body microphone, in its Memorandum Decision:

Q: So, with you being on felony probation, okay? Fourth—Fourth Amendment waiver, ok? So, you said you own this vehicle, right?

A: Yeah, well I just haven't registered it yet. I made a down payment of $450 and he wants $1000 total.

Q: Okay. Now, when did you get put on probation?

A: June 6th, when I got released from my rider.

Q: Okay. With that when you're driving the vehicle, okay? So, you gave law enforcement officers permission to search the vehicle, correct?

. . .

Q: So do you give me consent to search the vehicle?

A: Uh, I don't really feel comfortable getting searched, but I don't—I thought you could just search it, you know.

Q: Well, yeah, I know but—

A: Yeah, I mean, yeah, but if you have to, yeah.

. . .

(Hansen consents to pat down)

. . .

Q: You're giving me consent to search the vehicle?

A: Well, like I said I don't feel comfortable but if you have to—

Q: Like we talked about before, you're on felony probation, okay? Did you sign something that says—did you sign a Fourth Amendment waiver?

A: Yeah. I'm pretty sure, yeah.

. . .

(discussing probation packet)

2

. . .

Q:     Yeah. That's why I'm asking for consent, okay?

. . .

(following conversation with [Hansen] about his Probation Officer)

. . .

Q:     So, you give me consent? I just want to clarify.

A:     Well, I mean I'm not—

Q:     Well that's what we just talked about.

A:     Well, I mean then, no, I don't.

Q:     You don't have to give me consent. But if you sign a Fourth Amendment waiver—

A:     That is consent.

Q:     What's that?

A:     Then isn't that consent?

Q:     That's not consent, okay? What I'm asking for is consent, based on what I'm seeing here.

Hansen ultimately declined to give consent for Sergeant Sproat to search the vehicle.

After his conversation with Hansen, Sergeant Sproat attempted to contact Hansen's probation officer, but she was not available. When Hansen's probation officer did not respond, Sergeant Sproat attempted to contact an on-call probation officer. Unable to get ahold of an on-call probation officer, Sergeant Sproat began drafting a citation.

After a discussion with another Idaho State Police trooper, Sergeant Sproat decided to search the vehicle. During the search, Sergeant Sproat found a digital scale, a methamphetamine pipe, and eight "dime" baggies of what appeared to be methamphetamine. Based on the contraband found in the vehicle, Sergeant Sproat arrested Hansen.

On October 3, 2018, a grand jury indicted Hansen for possession with intent to deliver a controlled substance in violation of Idaho Code section 37-2732(a)(1)(A). Hansen filed a motion to suppress all evidence found in the vehicle. He argued, among other things, that his vehicle was searched without a warrant in violation of the Fourth Amendment of the United States Constitution and Article I, section 17 of the Idaho Constitution.

The State argued that the warrantless search of Hansen's vehicle was nevertheless reasonable because it was conducted pursuant to the consent exception to the warrant

3

requirement. Specifically, the State argued that Hansen had previously voluntarily given his consent to searches as a condition of his probation. The State further argued that any attempt by Hansen to revoke his consent was ineffective because consent given pursuant to a probation agreement can only be revoked in a due process hearing. In response, Hansen argued the consent exception did not apply because he withdrew any previously given consent in his conversation with Sergeant Sproat, including any consent given as a condition of his probation.

The district court granted Hansen's motion to suppress. It reasoned that Hansen had effectively revoked the consent given as a condition of his probation agreement and that Sergeant Sproat lacked the otherwise necessary reasonable suspicion of criminal activity to justify the search of a probationer. The State timely appealed.

## II. ISSUE ON APPEAL

Did the district court err in granting Hansen's motion to suppress on the grounds that Hansen revoked his consent to searches agreed to as a condition of his probation?

## III. STANDARD OF REVIEW

When reviewing a district court's order granting or denying a motion to suppress evidence, this Court uses a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)). "However, this Court may freely review the trial court's application of constitutional principles in light of the facts found. *Id.*

## IV. ANALYSIS

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "It is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment." *United States v. Jones*, 565 U.S. 400, 404 (2012). "The 'basic purpose' of the Fourth Amendment 'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.'" *State v. Maxim*, 165 Idaho 901, 904, 454 P.3d 543, 546 (2019) (quoting *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018)). When a search is conducted in violation of the Fourth Amendment, a defendant "may seek to have the court exclude evidence obtained by the unconstitutional police conduct." *Id.* at 905, 454 P.3d at 547 (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).

4

There is no doubt that a search occurred in this case when Sergeant Sproat opened the door of Hansen's vehicle and began inspecting the interior. However, "[t]he touchstone of the Fourth Amendment is reasonableness." *State v. Wulff*, 157 Idaho 416, 422, 337 P.3d 575, 581 (2014) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). The Fourth Amendment does not forbid all state-initiated searches; it only proscribes searches that are *unreasonable*. *Jimeno*, 500 U.S. at 250; *Maxim*, 165 Idaho at 905, 454 P.3d at 547.

"Warrantless searches are presumptively unreasonable." *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995) (citing *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989)). When a search is conducted without a warrant, the State carries the burden of demonstrating that "the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances." *Id.*

Consent is one of the "well-recognized exceptions" to the warrant requirement. *Wulff*, 157 Idaho at 419, 337 P.3d at 578 (citations omitted). The State bears the burden of showing that consent "was in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (citations and quotation marks omitted). Consent given by a probationer as a term in his probation agreement is encompassed within the consent exception. *Maxim*, 165 Idaho at 905, 454 P.3d at 547; *see also State v. Jaskowski*, 163 Idaho 257, 259–60, 409 P.3d 837, 839–40 (2018). "It is well settled that when the basis for a search is consent, the state must conform its search to the limitations placed upon the right granted by the consent." *Jaskowski*, 163 Idaho at 260, 409 P.3d at 840 (quoting *State v. Turek*, 150 Idaho 745, 749, 250 P.3d 796, 800 (Ct. App. 2011)). In other words, the scope of the consent given is the critical inquiry when evaluating whether a search is justified by the consent exception. In the context of consent provided as a term in a probation agreement, courts look to the language of the agreement itself to determine whether a search was objectively reasonable. *Id.* at 261, 409 P.3d at 841. As such, warrantless searches conducted pursuant to a Fourth Amendment waiver provision in a probation agreement may be rendered reasonable, at least where the officer(s) conducting the search know of the waiver and the search does not exceed the scope of the consent provided for in the probation agreement. *Maxim,* 165 Idaho at 905, 908, 454 P.3d at 547, 550; *Jaskowski*, 163 Idaho at 261, 409 P.3d at 841.

Here, Hansen agreed to a Fourth Amendment waiver provision when he signed his probation agreement. He does not argue that he involuntarily signed the probation agreement,

5

nor does anything in the record indicate to us that it was not voluntarily entered into. Furthermore, this case does not present a situation where an officer conducted a search of a probationer without knowledge of his probationary status. *See Maxim*, 165 Idaho 901, 454 P.3d 543. Rather, the question here is whether Hansen expressly revoked the consent provided for in his probation agreement when he refused to provide consent to be searched during the traffic stop. As such, we must consider whether a probationer may unilaterally revoke consent given as a condition of his probation, and if so, how that revocation is accomplished.

The United States Supreme Court has thus far declined to address whether the consent exception applies to a probationer's Fourth Amendment waiver, let alone whether such consent can be revoked. *See United States v. Knights*, 534 U.S. 112, 118 (2001) (declining to consider consent rationale and holding that search was supported by reasonable suspicion); *Samson v. California*, 547 U.S. 843, 852 n.3 (2006) (declining to address consent rationale, but holding that a suspicionless search of a parolee was otherwise reasonable under the Fourth Amendment).

In a recent Fourth Amendment case, albeit in a non-probation context, this Court recognized that the right to withdraw one's consent is "[i]nherent in the requirement that consent be voluntary." *State v. Halseth*, 157 Idaho 643, 646, 339, P.3d 368, 371 (2014) (citing *Missouri v. McNeely*, 569 U.S. 141, 160–62 (2013)). In *Halseth*, police relied on an implied-consent statute to justify drawing and testing the blood of a motorist for alcohol. *Id.* at 644, 339 P.3d at 369. The motorist was driving a vehicle that had stolen license plates mounted on it. *Id.* When a police officer attempted to stop him, he drove away with the officer in pursuit. *Id.* After the motorist was eventually stopped by another officer, he refused to complete voluntary field sobriety tests and was transported to a nearby hospital. *Id.* The officer attempted to have the driver's blood drawn for evidentiary testing, but the driver protested. *Id.* Despite his protests, the officer had a blood sample taken and the State charged Halseth with driving under the influence of alcohol based on the results. *Id.* The district court suppressed the blood-draw evidence and this Court affirmed. *Id.* at 646, 339 P.3d at 371. In doing so, this Court reasoned that consent must be voluntarily given to be effective, and inherent in the concept of voluntariness is the requirement that consent also be revocable. *Id.* Therefore, consent to a search that is voluntarily given, may be subsequently withdrawn. *Id.*; *see also State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014); *State v. Eversole*, 160 Idaho 239, 242, 371 P.3d 293, 286 (2016); *State v. Charlson*, 160 Idaho 610, 616, 377 P.3d 1073, 1079 (2016).

6

Other courts have generally recognized that consent to a search may be revoked at any time before the search is completed as a corollary to the voluntary nature of consent. *State v. Ryce*, 368 P.3d 342, 369 (Kan. 2016) (holding that motorists implied consent for breath-alcohol testing is revocable); *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) ("[A]ny consent given is valid until it is withdrawn by the defendant"); *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999) ("[T]he consenting party may limit the scope of that search, and hence at any moment may retract his consent."); *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir. 1996) (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.2(f), at 674 (3d ed. 1996)) ("A consent to search is not irrevocable, and thus if a person effectively revokes . . . consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent"); *United States v. Mitchell*, 82 F.3d 146, 151 (7th Cir. 1996) ("Consent to search may, of course, be withdrawn or limited by a criminal suspect[.]"); *United States v. McFarley*, 991 F.2d 1188, 1191 (4th Cir. 1993) ("[O]nce consent is withdrawn or its limits exceeded, the conduct of the officials must be measured against Fourth Amendment principles."); *United States v. Carter*, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (recognizing a constitutional right to revoke one's consent to search).

In prior cases, we have analogized probation agreements to contractual terms when discussing the reasonableness of a search conducted pursuant to a Fourth Amendment waiver. *See Jaskowski*, 163 Idaho at 261, 409 P.3d at 841 (discussing *State v. Gawron*, 112 Idaho 841, 409 P.2d 1295 (1987) and *State v. Purdum*, 147 Idaho 206, 207 P.3d 182 (2009)). In *Jaskowski*, we explained:

> It was no accident that our decision in *Gawron* recognized the analogy between probation agreements and traditional contractual terms in governmental contracts. We take an objective approach to interpretation of contracts. Under this approach, the court will give force and effect to the words of the contract. The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.

*Id.* Indeed, we continue to believe that viewing the interpretation of the terms of a probation agreement as analogous to the interpretation of a contract is a prudent approach for determining whether a search falls within the scope of consent given by a probationer.

In determining how a probationer may revoke the consent provided for in his probation agreement, a careful balance must be struck between the Fourth Amendment requirement that

consent be voluntary and the contractual nature of probation agreements. On the one hand, consent must be revocable to be voluntary, and consent must be voluntary to be valid. On the other hand, consent given as a condition of probation is agreed to in exchange for the probationer's freedom from incarceration. In addition, society has an interest in the supervision of probationers for the dual purpose of rehabilitating the probationer and reducing the risk that he will engage in further criminal conduct while on probation. *U.S. v. Knights*, 543 U.S. 112, 119–21 (2001). In view of these interests, the probationer enters into an informed and voluntary agreement on certain conditions that reduce his expectation of privacy. *See id.* at 119–20; *Gawron*, 112 Idaho at 842–43, 409 P.2d at 1296–97. A probationer is expected to abide by the terms of his probation agreement, lest his probation be revoked. *See State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007).

Given these competing considerations, we conclude that a probationer may only revoke the consent given as a condition of probation at a hearing before the court that entered the order granting probation in the first place. Although a probation agreement is an agreement between the State and the probationer, it is also, at its core, the product of a court order. If the probationer violates the agreement, the court decides whether the defendant's probation will be revoked. *Id.* ("Once a probation violation has been proven, the decision of whether to revoke probation is within the sound discretion of the court.") (citation omitted). While law enforcement officers may learn of the probationer's consent to be searched, and perform searches pursuant to that consent, they do not have the authority to revoke his probation. As a corollary, the probationer cannot unilaterally revoke one of the conditions of his probation when doing so would benefit him at the moment. Rather, he must seek to revoke or alter the condition the same way it was granted, via court order.

Here, Hansen never sought to modify the Fourth Amendment waiver term of his probation agreement with the court that granted him probation. Instead, Hansen refused to provide Sergeant Sproat with consent to search his vehicle during the traffic stop. Even assuming that Hansen intended to revoke the previously agreed to consent in his probation agreement, such an attempt was ineffective because it was not made in court. Accordingly, we conclude that the district court erred in finding that Hansen revoked the consent to be searched provided for in his probation agreement.

Having concluded that Hansen did not revoke the consent provided for in his probation agreement, we turn now to the language of the Fourth Amendment waiver provision in the agreement to determine whether Sergeant Sproat's search of the vehicle was reasonable. The waiver provision provides as follows:

> I consent to the search of my person, residence, vehicle, personal property, and other real property or structures owned or leased by me, or for which I am the controlling authority conducted by any agent of [the Idaho Department of Correction] or a law enforcement officer. I hereby waive my rights under the Fourth Amendment and the Idaho constitution concerning searches.

Sergeant Sproat's search of Hansen's vehicle was well within the scope of Hansen's Fourth Amendment waiver. The plain language of the waiver provision allows any "law enforcement officer" to search his "vehicle." Sergeant Sproat, as an officer of the Idaho State Police, is undoubtedly a law enforcement officer, and he searched Hansen's vehicle, one of the categories of property specifically provided for in the waiver provision. Thus, the search was within the scope of the consent in Hansen's Fourth Amendment waiver. Because the search was conducted within the scope of consent provided by Hansen, and his consent was not revoked in a hearing before the court in which it was given, we conclude that the search was reasonable under the Fourth Amendment.

Finally, in its briefing, the State argued that Sergeant Sproat's search of Hansen's vehicle was reasonable under the more general Fourth Amendment balancing test employed by the United States Supreme Court in *United States v. Knights*, 534 U.S. 112 (2001) and *Samson v. California*, 547 U.S. 843 (2006). Because we conclude that the district court erred in determining that Hansen had revoked the consent provided for in his probation agreement, we need not address the merits of the State's balancing-test argument.

## V.  CONCLUSION

For the reasons discussed above, the district court's order granting Hansen's motion to suppress is reversed and the case is remanded for further proceedings consistent with this opinion.

Justices BRODY, BEVAN, and MOELLER **CONCUR.**

STEGNER, J., concurs in the result.

9