IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 50797

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: March 26, 2026 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| CHARLES LARRY REYES, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction for unlawful possession of a firearm and being a persistent violator, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Charles Larry Reyes appeals from his judgment of conviction for unlawful possession of a firearm and being a persistent violator. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Reyes was living in a house with a woman on probation. As a condition of the woman's probation, she signed an agreement that included a waiver of her Fourth Amendment right against unreasonable searches and seizures. Law enforcement officers were surveilling the house after receiving a tip from a confidential informant that approximately twenty-two pounds of methamphetamine had been delivered to the house by mail. The informant also warned officers

1

that the house had "some sort of a safe with numerous firearms being involved." The informant told officers that Reyes was involved in trafficking the methamphetamine. While outside the house, officers watched one man exit the house as another man drove up in an unregistered vehicle. The two men then went inside the house together. Officers then saw one of the men return to the unregistered vehicle, retrieve a backpack, and walk back inside the house. In addition to the unregistered vehicle, officers noted that a vehicle belonging to Reyes was parked outside the residence.

One of the officers contacted the probation officer assigned to the woman living at the house and requested the probation officer conduct a compliance check on the residence. The probation officer came to the house and knocked on the door. A roommate answered the door and let the officers inside. The probation officer asked if Reyes was inside the residence and the roommate said he did not know. The roommate knocked on Reyes' bedroom door and the probation officer heard movement in the room. After a delay of about forty-five seconds, Reyes stepped out of the room, closing the door behind him. The probation officer reported that Reyes appeared disheveled and told the probation officer he had been sleeping. The probation officer asked if anyone else was in Reyes' bedroom, and he said no. The probation officer then asked if he could check the room to confirm no one else was inside. Reyes asked the probation officer why he needed to check the room, and the probation officer stated that he needed to "make sure to check the rooms, the entirety of the home, because [his client] lives there." Reyes then allowed the probation officer to enter Reyes' bedroom, where the officer observed a person lying on the bed. This person was not the woman on probation and was removed from the room. The probation officer then entered the room and found a man lying on the floor near the bed. The man appeared to be attempting to hide. The probation officer also saw a handgun in plain view on top of a dresser.

The probation officer confirmed the handgun was empty and left it on the dresser. The probation officer then requested assistance from the other law enforcement officers, who had been waiting outside. After being read his *Miranda*[1] rights, Reyes admitted the handgun belonged to him. The law enforcement officers obtained a search warrant for the house and vehicles and found

---

[1]    *See Miranda v. Arizona*, 384 U.S. 436 (1996).

2

controlled substances and additional weapons. A grand jury indicted Reyes on two counts of trafficking in controlled substances, five felony counts of possession of controlled substances, two counts of unlawful possession of a firearm, and one count of misdemeanor possession of drug paraphernalia. The State also alleged Reyes was subject to a persistent violator sentencing enhancement. Reyes filed a motion to suppress all evidence obtained during the encounter, claiming the protective sweep of his bedroom was unlawful. The district court denied the motion and Reyes entered into a plea agreement. Reyes pled guilty to felony unlawful possession of a firearm (I.C. § 18-3316) and being a persistent violator (I.C. § 19-2514) and the State dismissed the remaining counts. Reyes appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Reyes argues the district court erred in denying his motion to suppress because the probation officer's warrantless entry into his bedroom was not justified as a lawful protective sweep. Reyes contends that the probation officer did not have legal authority to conduct a protective sweep because he is not a law enforcement officer and did not possess reasonable, articulable suspicion to conduct a protective sweep of Reyes' bedroom. The State responds that the district court properly found that probation officers may conduct protective sweeps. The State further contends the district court correctly found that the protective sweep of Reyes' bedroom was justified based on the facts of the case. We agree that the district court properly denied Reyes' motion to suppress evidence.

3

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). Consent is one of the well-recognized exceptions to the warrant requirement and consent given by a probationer as a term of his or her probation agreement is encompassed within the consent exception. *State v. Hansen*, 167 Idaho 831, 835, 477 P.3d 885, 889 (2020). When searching a residence in which a probationer resides in with other co-occupants, officers are limited to searching those areas they reasonably believe to be under the control of the probationer or shared control of the probationer and other occupants. *State v. Horn*, ___Idaho___, ___, 580 P.3d 1193, 1204 (2025); *State v. Barker*, 136 Idaho 728, 732, 40 P.3d 86, 90 (2002).

There is no question that the probation officer was lawfully in the residence because of the woman's probation agreement, which included a waiver of her Fourth Amendment rights. However, the State does not argue, and the record does not suggest, that the woman had full or shared control of Reyes' bedroom. Thus, while the probation officer was lawfully present in the home, his entry into Reyes' bedroom was not necessarily justified on the basis of the woman's probation agreement. Instead, the State argues that the probation officer lawfully entered Reyes' bedroom to perform a protective sweep.

It is a fundamental principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* One such exception is a protective sweep of a residence to ensure officer safety. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). In conjunction with an in-home arrest of a suspect, officers may conduct a protective sweep of the premises, provided that they have a reasonable, articulable suspicion that the area to be swept harbors an individual threatening danger to those present. *Id.* A "protective sweep" has been defined as a quick and limited search of the premises, incident to an arrest and conducted to

4

protect the safety of officers or others on the scene, narrowly confined to a cursory visual inspection of those places in which a person might be hiding. *Id*. at 327. Officers can, incident to an arrest and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be made. *Id*. at 334. Anything beyond that, however, must be supported by articulable facts which, considered with rational inferences from those facts, would warrant an officer in believing danger could be present. *Id*.

Thus, there are two types of protective sweeps: (1) those made without probable cause or reasonable suspicion and thus limited to the spaces immediately adjoining the place of arrest and (2) those based on articulable facts and rational inferences from those facts which may extend the scope of the protective sweep to places where a person posing a danger to those present might be hiding. *Id*. All protective sweeps should be limited in duration to the time it takes to complete the arrest and depart the premises safely. *Id*. at 335-36.

In Idaho, the protective sweep exception has evolved since the United States Supreme Court defined the exception in *Buie*. *See State v. Ravenaugh*, 133 Idaho 774, 778, 992 P.2d 769, 773 (1999) (holding that a protective sweep may be performed inside while the suspect is arrested or detained outside the residence if the officers have the requisite reasonable suspicion); *State v. Rojas-Tapia*, 151 Idaho 479, 483, 259 P.3d 625, 629 (Ct. App. 2011) (holding a protective sweep of a rock house near the trailer where officers were executing a warrant was reasonable because officers did not know the identity of every person present but suspected drug activity and possible firearm possession); *State v. Northover*, 133 Idaho 655, 659-61, 991 P.2d 380, 384-86 (Ct. App. 1999) (holding that, as a precautionary measure and without probable cause or reasonable suspicion, an officer may enter an adjoining bedroom subsequent to a defendant's lawful arrest pursuant to a warrant). This evolution has made clear that, in general, law enforcement officers are permitted to take reasonable steps to ensure their safety. Furthermore, the interest of officer safety will be sufficient to outweigh any limited intrusion into a person's Fourth Amendment rights that may occur as a result of a protective sweep.

On appeal, Reyes argues that the probation officer did not have legal authority to conduct a protective sweep because he is a probation officer, not a law enforcement officer. While the precedent defining protective sweeps has evolved from cases involving traditional law

5

enforcement officers, we see no logical reason to exclude probation officers from this exception. Probation officers, when conducting lawful compliance checks on probationers, are placed in the same path of possible peril as law enforcement officers executing warrants. The risk of harm from unknown individuals during a probation compliance check is the same for probation officers as it is for law enforcement.

Reyes further contends that the protective sweep was unlawful because probation officers do not have authority to arrest individuals who are not on probation or parole, and none of the individuals in the home were arrested or detained when the probation officer entered Reyes' bedroom. This argument fails because neither arrest nor detention are prerequisites to a protective sweep. This Court has made clear that, although some protective sweep cases involve arrests, the same officer safety considerations apply equally whether officers are present to effectuate an arrest or conduct a search. *Rojas-Tapia*, 151 Idaho at 481, 259 P.3d at 627. We see no difference in the risks of harm to probation officers conducting a compliance check and those risks faced by law enforcement conducting a search--with or without a warrant. These risks are present in all residence searches, warrant or no warrant. *State v. Phipps,* 166 Idaho 1, 8, 454 P.3d 1084, 1091 (2019). Having considered the rationale justifying protective sweeps, we hold, as a matter of first impression, that probation officers conducting lawful compliance checks in a residence may conduct a protective sweep to the same extent and are subject to the same limitations as police officers in the same circumstances.

Finally, Reyes argues that, even if the probation officer was otherwise permitted to conduct a protective sweep, it was invalid because the officer lacked reasonable suspicion that Reyes' bedroom harbored an individual posing a threat. The district court's factual findings supporting its conclusion that the protective sweep was constitutionally permissible are uncontested on appeal.

First, the district court found that the probation officer was informed that at least two people, but possibly more, were present in the house in addition to Reyes. Next, the district court found the probation officer was not informed that firearms might be present in the house. The probation officer had been in the house before and knew that Reyes resided there with the probationer. The probation officer was, therefore, also familiar with the house's layout. The district court further found that when the probation officer knocked, the roommate who answered the door said he did not know how many people were present in the house. When that roommate

knocked on Reyes' bedroom door, the probation officer heard shuffling in the bedroom for about forty-five seconds before Reyes came out and closed the door behind him. Reyes initially hesitated when asked if other people were present in the bedroom but eventually said no. The probation officer asked to look in Reyes' bedroom, and when he asked why, the probation officer responded that he had access to the entire home because of his probationer. The probation officer later testified that he wanted to enter the bedroom to confirm that no other people were present who could pose a threat. The district court found that the probation officer reasonably believed at least one other unidentified male was present in the house. When the probation officer entered the bedroom, he first saw a woman and then chose to perform the protective sweep to confirm that the missing unidentified male was not hiding in the room. As a result of the protective sweep, the probation officer found a man hiding on the floor next to the bed and a handgun in plain view on top of the dresser.

The district court denied Reyes' motion to suppress, ruling that the State had shown that it was reasonable for the probation officer to believe other people were present in the house who may pose a risk to the probation officer's safety and the safety of others at the scene. We agree that the probation officer's suspicion that others were present in the home was reasonable but cannot go so far as to conclude that the State demonstrated a reasonable suspicion of potential danger. The district court found that the probation officer was not aware of the presence of possible firearms and was familiar with the layout of the house. It appears, therefore, that the district court's decision was based on the possible presence of other persons in the house. We hesitate to conclude that the mere presence of other non-probationers in a house is adequate to support reasonable suspicion sufficient to justify a protective sweep of the entire house. However, we affirm on other grounds. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015).

Law enforcement is permitted to detain anyone present in the residence during a lawful parole or probation search to prevent flight of criminals, ensure officer safety, and facilitate orderly completion of valid searches. *Phipps*, 166 Idaho at 8, 454 P.3d at 1091. It would be inconsistent to allow a probationer present in a residence during a probation compliance check to hide in the bedroom of a resident not on probation. Accordingly, the probation officer's entry into Reyes'

bedroom to detain other persons present during the probation compliance search was reasonable under the circumstances.[2] We conclude that probation officers conducting a probation compliance search may conduct a protective sweep during the search. Therefore, the district court did not err in denying Reyes' motion to suppress.

## IV.

## CONCLUSION

Reyes has failed to show the district court erred in denying his motion to suppress evidence based on the protective sweep of his bedroom. Accordingly, Reyes' judgment of conviction for unlawful possession of a firearm and being a persistent violator is affirmed.

Judge GRATTON, **CONCURS**.

Judge LORELLO, **SPECIALLY CONCURRING**

I concur in the majority's conclusion that Reyes has failed to show the district court erred in denying his motion to suppress. However, I would conclude that the protective sweep of the bedroom was proper independent of whether the probation officer could have detained the bedroom's occupants as part of a general compliance search. *See State v. Phipps*, 166 Idaho 1, 454 P.3d 1084 (2019). Based on the totality of the circumstances, there was a sufficient level of reasonable, articulable suspicion that someone might be in the residence who could pose a threat to the officers on the scene, which justified a protective sweep of those areas potentially harboring such individuals. *See State v. Slater*, 133 Idaho 882, 886-87, 994 P.2d 625, 629-30 (Ct. App. 1999). Those circumstances include: (1) the person who answered the door indicated he did not know how many people were present in the house; (2) law enforcement's observation of individuals going into the home just prior to the search; (3) the underlying drug-related nature that formed the basis of the compliance search; (4) the movement inside the bedroom in response to a knock on the bedroom door; and (5) the reported presence of multiple firearms as well as a firearm in plain view inside the bedroom. I would affirm on this basis.

---

[2]    Furthermore, while not necessary to our decision, we note that, even after the woman was taken from Reyes' bedroom, there was still an unaccounted-for male in the residence and the probation officer knew that Reyes had just lied about the presence of other persons in the bedroom.